[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other CT Page 7700 relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Kathleen M. Moulder, and the defendant were married at Westfield, New Jersey on June 28, 1974. The plaintiff and the defendant have both resided in the State of Connecticut continuously for more than one year immediately preceding the date of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of the marriage and no minor children have been born to the plaintiff wife since the date of marriage of the parties, and neither party has received state or municipal assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that each party is partially at fault for the breakdown of the marriage. The parties separated in October of 1994.
The plaintiff was born on February 5, 1943, and is fifty-three years old. She has suffered from asthma since birth. She has never had any children. The plaintiff was married prior to her marriage to the defendant. Her prior marriage ended in divorce on June 5, 1974, in New Jersey. After the parties separated in October of 1994, the defendant went to Columbia, South America where he remained until February of 1995. He then returned to the Redding home from February of 1995, until May of 1995, where he paid agreed upon rent of $200 weekly to the plaintiff.
After vacating the Redding property in May of 1995, per court order, the defendant has never returned to the family residence to live.
The plaintiff's financial affidavit dated May 10, 1996, shows a liability to Robert Saxon of $40,000. This was money the plaintiff borrowed in order to pay various bills that she incurred. Of the $40,000 owed to Mr. Saxon, $10,000 was recently advanced to the plaintiff and put into her Jackson, May and Moulder corporate business account from which she withdrew $7000 to pay towards her attorney's fees involving the dissolution action. She also withdrew $1552 to pay to the court reporter from her corporate account regarding this dissolution action. The plaintiff's financial affidavit submitted at the commencement of the trial dated May 7, 1996, showed a first mortgage on the family home with a balance of $127,150. That representation was CT Page 7701 inaccurate in that it included the $80,000 lien placed on the home by Ruth Randall. The actual first mortgage balance as of May 10, 1996, was $48,557.39.
The parties are in dispute as to the plaintiff's present earnings. The court finds from the evidence presented that her present weekly income as an advertising executive employed by Jackson, May and Moulder, Inc. is $81 weekly, and a net weekly income of $75.
The plaintiff's financial affidavit shows a debt to the St. Joseph Hospital. The correct balance on that bill is $125. As of the date of the financial affidavit of May 10, 1996, only $200 was owed to the St. Joseph Hospital, not $2500 as shown on the plaintiff's financial affidavit.
The plaintiff also owes George Franco $15,000, she owes on VISA and MasterCard $7000, she owes Cardiology Associates $685, and she owed an estimated fee to her attorneys involved in this divorce of $15,000 as of May 10, 1996. She has $150 in her First Fidelity checking account and shares of stock with Alco Standard with a value of $432. She has a life insurance policy with a cash surrender value of $2500, and an IRA with a value of $2500.
The defendant was married prior to his marriage to the plaintiff. His prior marriage ended in divorce on June 26, 1973, in New Jersey. The defendant was born on September 26, 1941, and is now fifty-five years old. He is in good health. He graduated high school in New Zealand and has attended college both in New Zealand and Williamsport, Pennsylvania. While in New Zealand, he took courses in banking and finance management. He took one course in Williamsport, Pennsylvania in accounting. He is not a United States citizen. He has been here since 1963.
The defendant's financial affidavit dated May 7, 1996, shows a liability of $2500 to Bob Saxon. On April 12, 1991, the defendant borrowed $2600 from Robert Saxon in order to pay some current debt. That loan has not been repaid. The defendant originally borrowed $5000 from Richard Reiser, who was a friend. The balance owed on that loan is approximately $3000. He also owes approximately $4000 to Curt Hauser that was borrowed approximately three to four years ago. He also borrowed $3000 from Joanne Puglese in about April, 1996.
The defendant also has a telephone liability of $1740, a CT Page 7702 liability to VISA of $2428, a MasterCard liability of $1,069.70, and a liability to his attorney of $5300. His present gross monthly income is $2451. His net monthly income is $1,746.02. His net weekly income is $406.02. He owns a 1989 Oldsmobile with a value of $400. He has a checking account with a balance of $350.
The defendant was employed by Woodhouse, Drake and Carey from approximately 1973 through 1979. He then formed Antipides Trading, Inc. in 1979. He was the manager of the tea department at Woodhouse, Drake and Carey. Woodhouse, Drake and Carey was a trading company. He had previously been employed at Mitchell Cotts and Company. When Mitchell Cotts and Company closed its New York office, he was employed by Woodhouse, Drake and Carey. His primary job at Woodhouse, Drake and Carey was to import teas from other countries to North America. During the time he was employed at Woodhouse, Drake and Carey, he received a base pay and also received bonuses on occasion. When Woodhouse, Drake and Carey closed its tea department, he opened his own office under Antipides Trading, Inc. at Hanover Square in New York City. He remained there until approximately 1981, when that office was closed and a Glen Road, Newtown, Connecticut building was purchased. The defendant obtained an unsecured line of credit from Standard Charter Bank to be used as part of his business. The plaintiff guaranteed the line of credit. The plaintiff repaid the line of credit with a payment of $35,000.
In 1974, the defendant earned approximately $20,000. He earned in the $20,000 range in 1975, 1976 and 1977.
In 1978, the defendant earned between $48,000 and $50,000, including bonuses.
The plaintiff started working seriously in her career after the parties moved to Redding, Connecticut in June of 1978. The plaintiff is a creative and talented designer with strong entrepreneurial skills.
In 1979, the defendant had gross taxable wages of $24,583. The plaintiff had gross business income from her graphic design business of $2662. In 1986, the plaintiff had $44,693 in business income from her graphic arts business. The defendant had a business income loss of $34,200 as a result of writing off a worthless business bad debt. In 1987, the plaintiff had taxable business income from her graphic arts business of $31,591. The defendant was employed during this year by Knapp Tree, Inc. and had taxable income of $11,255. In 1988, the defendant had a loss from his business as an importer of $10,447. His income from Knapp CT Page 7703 Tree, Inc. was $6687. The plaintiff had taxable income from her graphic arts business, under the name of Kathleen Jackson Studio, of $20,816. In addition, she had income from the Studio, Inc. of $5912. In 1989, the defendant had a business loss from his importer business of $1136. The plaintiff had a profit from her business of $20,704. In addition, she had wages from the Studio, Inc. of $36,000. In 1990, the defendant had a business loss from his importer business of $3820. The plaintiff had a profit from her business of $5118. In addition, the plaintiff had wages of $35,000. In 1991, the defendant had a business loss of $6709 from his commodities import business. The plaintiff had wages from the Studio, Inc. of $33,000. In 1992, the defendant had a business loss of $3150 from his commodities import business and had income from Knapp Tree, Inc. of $6699. The plaintiff had income from the Studio, Inc. of $36,000. In 1993, the defendant had a business loss from his commodities import business of $6855. His gross wages were $9691. The plaintiff had income of $39,000. In 1994, the defendant had wages from Knapp Tree, Inc. of $10,615. The plaintiff had wages from Jackson, May and Moulder, Inc. of $36,000.
On or about April 2, 1973, property that the defendant owned with his ex-wife was sold. The defendant received a net check from that sale of $9,626.15 less a deposit of $5600 that he had retained for a net amount dispersed to him of $4,026.15. In addition, he received $5,903.74 that was initially turned over to Charles Brandt, Esq. for Mitchell Cotts and Company, Inc.
When the parties married, the plaintiff owned her own home at 334 East Dudley Avenue, Westfield, New Jersey. That property was sold on January 6, 1975. The plaintiff netted $27,801.18 from that sale.
The next residence that the parties occupied was at 11 Scudder Road, Westfield, New Jersey. This property was purchased on October 12, 1974, for $67,600. The purchase price was financed in part through a first mortgage from the Lincoln Federal Savings in the face amount of $38,000, together with using the $6000 deposit on the sale of the 334 East Dudley Avenue property, with the balance financed from a bridge loan from Robert Saxon, a friend of the plaintiff. That bridge loan was ultimately paid in full from the net proceeds of property at 811 Franklin Avenue, Westfield, New Jersey. Title to the 11 Scudder Road property, Westfield, New Jersey, was taken only in the plaintiff's name. Both the plaintiff and the defendant cosigned the promissory note and the mortgage deed to Lincoln Federal Savings. The property at 11 Scudder Road, Westfield, New Jersey, was sold on July 17, 1978. The net amount received from the sale of this property was $63,355.70. The total sale price was $107,000. The parties resided at the 11 Scudder Road property from October 12, CT Page 7704 1974 to July 17, 1978. During the time the parties owned the property at 11 Scudder Road, improvements were made consisting of painting of the entire interior, installing a breakfast nook by installing windows, and building a free standing greenhouse. Those improvements were paid for in part from bonuses that the defendant received from his employment.
An investment purchase was made for property at 811 Franklin Avenue, Westfield, New Jersey, of a single family home with title taken in the name of the plaintiff only on July 14, 1977. The purchase price of the property was $44,500. A $32,500 loan was secured from the Lincoln Federal Savings and Loan Association, with both the plaintiff and the defendant cosigning the promissory note and mortgage deed. This property was sold on April 14, 1978. The net amount received from the sale was $20,446.94. When the property was purchased for $44,500, the difference between the purchase price of $44,500 and the mortgage of $32,500 came from bonus money of the defendant from his employment. The net proceeds were used to pay off the bridge loan to Robert Saxon for funds advanced by him to purchase the property at 11 Scudder Road, Westfield, New Jersey.
On June 16, 1978, a home was purchased located at 54 Lonetown Road, Redding, Connecticut for $127,500 in the name of the plaintiff only. A first mortgage was obtained from the Norwalk Savings Society in the face amount of $62,500 dated June 16, 1978. The mortgage deed securing the promissory note was signed only by the plaintiff. The promissory note was signed by both the plaintiff and the defendant. On November 6, 1981, a loan was taken out by the plaintiff from Connecticut Bank and Trust Company in the face amount of $30,000 together with add on interest of $34,867.20. That loan was secured by a mortgage on the property at 54 Lonetown Road, Redding, Connecticut. No credible evidence has been presented to this court as to what use was made of the $30,000 loan from CBT. That loan has since been paid in full. There is a certificate of attachment on the property at 54 Lonetown Road, placed by Ruth J. Randall, arising out of a suit brought by her against the plaintiff and the Studio, Inc. in the amount of $80,000. That attachment and the underlying lawsuit arises out of a dispute between the plaintiff and/or Studio, Inc. on the one hand, and Ruth J. Randall on the other hand regarding the manner in which Ruth J. Randall's employment relationship was terminated. The court finds that the fair market value of the property at 54 Lonetown Road, Redding, Connecticut is $395,000. The balance of the first mortgage on the property is $44,557.39, leaving a net equity of $350,442.61. In addition to obtaining their first mortgage to use towards the purchase price, the plaintiff obtained some interim bridge loan financing that was paid off in full from the sale of the Scudder property. From the time the 54 Lonetown Road property was purchased, CT Page 7705 the plaintiff paid the mortgage payments and the real estate tax payments. The $30,000 second mortgage has since been paid off.
The plaintiff claims that the reason that the various marital residences were all placed in her name was as a result of the defendant representing to her that she would always own her own home. The court finds that that claim is not credible.
The parties purchased a parcel of land located at Lot No. 13, Castaway Place, Whangaparaoa, New Zealand on March 16, 1990, for $50,500. Sixteen thousand dollars in cash of the parties was used toward the purchase price, with the balance financed by a first mortgage from ASB Bank of $35,150. The purchase price of $50,500 was New Zealand dollars, and the deposit of $16,000 was New Zealand dollars, and the first mortgage of $35,150 was New Zealand dollars. The court finds that the present fair market value of that property is $75,000 in American dollars, and that it does not have any present mortgage. The property is located in Auckland, New Zealand. Title to the property is in the names of the plaintiff and the defendant. The cost of the New Zealand lot in American dollars was $35,000.
By deed dated November 30, 1981, the plaintiff took title to property at 8 Glen Road in Newtown, Connecticut that was to be used as an office for the defendant's business. The purchase price of the property was $72,000. The grantors were Stephen J. Ondek and Patricia A. Ondek. The property was paid for in part through a $54,000 loan secured by a promissory note and mortgage deed from People's Savings Bank dated December 1, 1981, and recorded in the Newtown land records in Volume 301, page 989. The mortgage deed was signed only by the plaintiff. Both the plaintiff and the defendant executed an adjustable rate loan rider to the promissory note dated December 1, 1981. The sellers, Stephen J. Ondek and Patricia A. Ondek, took back a purchase money mortgage and promissory note in the face amount of $10,800. The $10,800 promissory note was signed by both the plaintiff and the defendant. The mortgage deed was signed only by the plaintiff. On July 18, 1983, People's Savings Bank placed a lis pendens on the property as part of an action brought to foreclose the mortgage on the property. The plaintiff sold the property to John P. Archer and Jan B. Archer for $93,500 on July 31, 1984. The sale price was sufficient to pay off the first mortgage and the second mortgage with the seller retaining a $9350 deposit, and having an additional amount held in escrow from the sale of $2,604.63.
On October 15, 1994, the parties entered into a separation agreement. The plaintiff was represented by counsel who prepared that agreement. The defendant did not seek the advice of counsel. Under the CT Page 7706 terms of the agreement, the property located at 54 Lonetown Road, Redding, Connecticut was to be retained by the wife, and the New Zealand property was to be retained by the husband. Each party was to retain his or her own clothing, jewelry and other personal effects, including items he or she may have received as gifts from the other party. Each party waived alimony against the other. The husband agreed to vacate the marital domicile at 54 Lonetown Road, Redding, Connecticut on or before December 1, 1994. The wife was to retain her 1990 Honda Accord and the husband was to retain his 1989 Suzuki. The court finds that the separation agreement of October 15, 1994, is not fair and equitable and, therefore, rejects it.
The parties are in dispute regarding items of personal property. They had previously entered into an agreement on February 20, 1996, coded No. 109, regarding the division of personal property listed on Schedule B. They are in dispute as to whether all of those items listed on Schedule B have been turned over to the defendant that he was to receive, and are in further dispute regarding other items that were not listed on Schedule B. The defendant filed in court on July 26, 1996, a "list which I, George Jackson, am requesting" regarding personal property.
This court has considered the provisions of § 46b-82 regarding the issues of alimony, and has considered the provisions of § 46b-81(c) regarding the issues of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. No alimony is awarded in favor of either party.
C. BY WAY OF PROPERTY ORDERS
1. All of the plaintiff's interest in the corporate stock of Jackson, May and Moulder, Inc. is awarded to the plaintiff.
2. All personal property and furniture in the possession of the defendant is awarded to the defendant.
3. All personal property and furniture in the possession of the CT Page 7707 plaintiff is awarded to the plaintiff except for the following items which were listed by the defendant on the items he was requesting as submitted to the court on July 26, 1996:
 a. Items 2, 3, 4, 7, 8, 11, 12, 15, 20, 23 and 24 are awarded to the defendant, in the event they can be located.
 b. Items 1, 10, 13 (of which there are five prints), 19, 21, 26, 31 and 36 are awarded to the defendant.
c. Item 6 is to be split equally between the parties.
4. The plaintiff is to hold the defendant harmless from all of the liabilities shown on her financial affidavit.
5. The defendant is to hold the plaintiff harmless from all of the liabilities shown on his financial affidavit.
6. The plaintiff is to execute a promissory note secured by a mortgage deed in favor of the defendant for the family residence located at 54 Lonetown Road, Redding, Connecticut.
 a. The promissory note is to be in the face amount of $75,000 dollars and it is to be due and payable without interest thirty days after the earliest of the following four contingencies: (1) the commencement of a foreclosure action by any party; (2) the family residence no longer being occupied by the plaintiff as her principal residence; (3) October 1, 1997; and (4) in the event the property is sold, then the promissory note shall be due and payable on the date of the sale.
 b. In the event payment is not made in full when due, then interest is to run at the rate of 8 percent per annum effective on the date of the filing of this decision.
 c. The promissory note is to also contain a provision for the payment of attorney's fees in the event of default.
 d. The court retains jurisdiction over any dispute that may arise involving the language of the promissory note and/or of the mortgage deed.
 e. The promissory note and mortgage deed are to be executed by the plaintiff and delivered to the office of CT Page 7708 Attorney Barbara A. Kershaw within thirty days from the date this decision is filed. The defendant is responsible for paying all recording fees.
7. The plaintiff is to execute and deliver to the office of Attorney Barbara A. Kershaw a quit claim deed to the New Zealand property in favor of the defendant within thirty days from the date this decision is filed.
8. The checking account shown on the plaintiff's financial affidavit, as well as the Alco Standard shares, as well as the cash surrender value of her life insurance policy, as well as her IRA, as well as her 1990 Honda are all awarded to the plaintiff.
9. The bank accounts and the 1989 automobile shown on the defendant's financial affidavit are awarded to the defendant.
10. The plaintiff is to hold the defendant harmless from the lawsuit brought against her and her corporation by Ruth Randall.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of the plaintiff or the defendant.
E. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
Axelrod, J.